IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TONY R. DALTON, | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 14-587-WS-C |
| ROBERT EARL HERRIN, *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff, who is proceeding *pro se*, filed a self-styled complaint and a motion to proceed without prepayment of fees. (Docs. 1, 2). Plaintiff's motion to proceed without prepayment of fees has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(1). Local Rule 72.2(c)(1) provides for the automatic referral of a non-dispositive pretrial matter, such as plaintiff's motion to proceed without prepayment of fees, to a Magistrate Judge. The consideration of this motion requires the Magistrate Judge to screen plaintiff's action pursuant to 28 U.S.C. § 1915(e)(2)(B).[1] *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) to non-prisoner actions).[2] After screening the present action, it is recommended that this action be dismissed for lack of subject matter jurisdiction.

---

[1] While the complaint was being screened, the Court received the $400 filing fee from plaintiff on March 2, 2015.

[2] Section 1915(e)(2)(B) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --

**I. Nature of Proceedings.**

Plaintiff named four defendants in his brief complaint: Mr. Robert Earl Herrin, Exalted Ruler of Elks Lodge #2782, Foley, Alabama ("lodge"); Mr. Frank Rohe, President of the Alabama Elks Association; Mr. Robert Eddings, member of the lodge's Board of Directors; and Ms. Debbie Osborne, Mr. Herrin's lady friend.  (Doc. 1 at 1).  It is alleged that defendant Herrin appointed plaintiff and Mr. Henry P. Glass to the house committee, which oversees the lodge's operations.  (*Id.*).  At that time, defendant Herrin told them "that members of lodge # 2782, preferred not to have people of color nominated for membership at [that location], meaning [A]frican [A]mericans, Mexicans, etc." (*Id.*).  In June and July, 2013, plaintiff and his wife began inviting their daughter Amber and her husband, an African-American, to visit them at the lodge.  (*Id.*).

After a couple of visits, defendant Osborne started "criticism."  (*Id.*).  The "criticism" continued unchecked by defendants Herrin and Rohe.  (*Id.*).  Then, defendant Eddings "join[ed] in with his version of criticism (foul language)."  (*Id.*). Eventually, plaintiff and his wife were told not to bring their daughter and her husband to the lodge.  (*Id.*).

Plaintiff alleges that "[t]he abuse and discrimination continues up to this very day against people of color and members who do not fit this lodge's version of what an

---

        (A)  the allegation of poverty is untrue; or
        (B)  the action or appeal -
            (i) is frivolous or malicious;
            (ii) fails to state a claim on which relief may be granted; or
            (iii) seeks monetary relief against a defendant who is immune from such relief.

elk should be or look like." (*Id.*). The lodge's officers are charged with violating lodge by-laws and house rules. (*Id.*).

Plaintiff contends that there has been civil rights violations and racial and member discrimination. (*Id.* at 1-2). There has been discrimination against his daughter and her husband, and against him, using violations of house rules and by-laws. (*Id.*). There has been "false witness against [him]" and "verb[a]l[] abuse against [his] character, such as (poor white trash, son of a bitch, Etc.) in the presen[ce] of other lodge members[,]" and defendant Osborne "call[ed] [his] Daughter (a 'N' word loving bitch) with witnesses standing by." (*Id.*). For relief, plaintiff states that he "leave[s] the relief factor to the discretion of the court." (*Id.*).

## II. Analysis.

### A. Authority to Dismiss for Lack of Jurisdiction.

In addressing any action on its docket, the Court's first consideration is to inquire into its jurisdiction, *United States v. Denedo,* 556 U.S. 904, 909, 129 S.Ct. 2213, 2219, 173 L.Ed.2d 1235 (2009), as the Constitution and Congress limits its jurisdiction only to hear certain actions. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). "Because a federal court is powerless to act beyond its . . . grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). " [O]nce a court determines that there has been no [jurisdictional] grant that covers a

particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).

### B.  Diversity of Citizenship Jurisdiction.

It is incumbent on a plaintiff in a federal action to set forth in his complaint the basis for federal subject matter jurisdiction. *See Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir.1994) (a pleader in federal court must affirmatively allege facts demonstrating the existence of jurisdiction). In that regard, Rule 8(a)(1) of the Federal Rules of Civil Procedure requires a plaintiff to include in his complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." *Id.* This statement must reflect that the court has subject matter jurisdiction based on diversity of citizenship or federal question. *Id.* ("Congress granted federal courts jurisdiction over diversity actions and cases raising a federal question.").

Because plaintiff did not identify any statute under which he is proceeding, the Court will examine the two sources on which its jurisdiction is based. Looking first at diversity of citizenship jurisdiction, the complaint must reflect that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- citizens of different States. . . . "  28 U.S.C. § 1332(a)(1). "Federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity' - the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth,* 428 F.3d 1317, 1321 n.2 (11th Cir. 2005). That is, diversity jurisdiction exists only when "there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998) (diversity of citizenship jurisdiction is destroyed by the mere presence of one non-diverse defendant).

In the present action, it appears that plaintiff is a resident of Alabama as well as defendants. (*Id.* at 2). Thus, defendants and plaintiff are not diverse, and the Court lacks diversity of citizenship jurisdiction over this action. Furthermore, the complaint does not reflect that the controversy satisfied the jurisdictional amount in that an amount for damages was not specified. *Dart Cherokee Basin Operating Co. v. Owens,* __U.S. __, 135 S.Ct. 547, 553,___ L.Ed.2d ___ (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith.").

**C. Federal-Question Jurisdiction.**

"Absent diversity of citizenship, a plaintiff must present a 'substantial' federal question in order to invoke the district court's jurisdiction." *Wyke v. Polk County School Bd.*, 129 F.3d 560, 566 (11th Cir.1997). Under federal-question jurisdiction, district courts are given "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton,* ___U.S. ___, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013). "Under the longstanding well-pleaded complaint rule, . . . , a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." V*aden v. Discover Bank,* 556 U.S. 49, 60, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009) (quotation marks omitted and brackets in original).

However, a court's subject matter jurisdiction does not extend to a cause of action that is not valid, as compared to one that is arguable. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S.Ct. 1003, 1010, 140 L.Ed.2d 210 (1998 ). "[W]hen the claim is so insubstantial, implausible, foreclosed by prior decision of [the

5

Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy," dismissal for lack of subject-matter jurisdiction is appropriate. *Id.* (quotation marks omitted). "A federal claim will be deemed without any legal merit if the claim has no plausible foundation, or [if] the court concludes that a prior Supreme Court decision clearly forecloses the claim." *Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992) (quotation marks omitted and brackets in original); *Southpark Square Lmtd. v. City of Jackson, Miss.*, 565 F.2d 338, 342 (5th Cir.) (same),[3] *cert. denied,* 436 U.S. 946 (1978). A claim "must be more than frivolous to support federal question jurisdiction" and can satisfy this threshold only if "there is any foundation of plausibility to the claim." *Id.* at 341.

Because plaintiff does not refer to a specific constitutional provision or a federal statute, the Court is examining the allegations that tend to support federal question jurisdiction.[4] *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972) (ruling that a *pro se* litigant's allegations are to be liberally construed); *cf. GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998) (holding that a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action"), *overruled on other grounds by Iqbal,* 556 U.S. 662 (2009). Considering plaintiff's assertions of civil rights violations and racial

---

[3] The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[4] Plaintiff's allegations of member discrimination and discrimination based on violation of house rules and by-laws are not violations of federal or constitutional law, and therefore will not be addressed in this Report and Recommendation.

discrimination with respect to the lodge, 42 U.S.C. § 2000a appears to be the statute closest to his allegations and theory for a violation of a federal right.  The Court interprets plaintiff's allegations of civil rights violations and racial discrimination as a claim for discrimination as no other information is provided to support civil rights violations beyond his claim for racial discrimination.

### 1. Discrimination in Places of Public Accommodations.

Discrimination in places of public accommodation is addressed by 42 U.S.C. § 2000a,[5] which provides:

> a) Equal access
>
> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of *race, color, religion, or national origin.*
>
> (b) Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments
>
> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce,

---

[5] This statute is found in Title II of the Civil Rights Act of 1964, which was enacted "to vindicate the deprivation of personal dignity that surely accompanies denial[] of equal access to public establishments."  *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250, 85 S.Ct. 348, 354, 13 L.Ed.2d 258  (1984).  By passing this Act, Congress sought to address "burdens that discrimination by race or color place[] upon interstate commerce."  *Id.* at 253, 85 S.Ct. at 355.  Congress received evidence in its hearings on the inability of African-Americans  to secure accommodations while traveling, which served as a basis for this Act.  *Id.*

>or if discrimination or segregation by it is supported by State action:
>
>>(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
>>(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
>>(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
>
>>(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.
>
>>*(e) Private establishments*
>
>>*The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) of this section.* (Emphases added.)

42 U.S.C. § 2000a. The chief purpose of this title is "to [re]move the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307-08, 89 S.Ct. 1697, 1702, 23 L.Ed.2d 318 (1969) (quoting H.R.Rep. No. 914, 88th Cong., 1st Sess., 18) (quotation marks omitted). To further this goal, only injunctive relief is available to "[a] plaintiff seeking

to enforce the substantive provisions of § 2000a[.]" *Lizardo v. Denny's, Inc.,* No. 97-cv-1234 FJS GKD, 2000 WL 976808, at *7 (N.D.N.Y. July 13, 2000) (*citing* 42 U.S.C. § 2000a-3(a); *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)), *aff'd,* 270 F.3d 94 (2d Cir. 2001).

In pleading a claim for violation of this statute, or for any federal civil action, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). This statement must contain factual content that allows the Court to reasonably conclude that the plaintiff's claim is facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The factual allegations must be sufficient "to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. Even though detailed factual allegations are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, 127 S.Ct. at 1949. Moreover, it will not suffice to plead merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965.

To state a claim for a violation of 42 U.S.C. § 2000a, it is required that the allegations show the establishment in question is a public accommodation with its operations affecting commerce. *United States v. Landsdowne Swim Club,* 894 F.2d 83, 86 (3d Cir. 1990) ("[A] place of public accommodation has two elements: first, it must be one of the statutorily enumerated categories of establishments that serve the public, . . . 42 U.S.C. § 2000a(b); second, its operations must affect commerce, *id.*"). The statute "sets forth a comprehensive list of establishments that qualify as a 'place of public

9

accommodation,' id. § 2000a(b), and in so doing excludes from its coverage those categories of establishments not listed." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431 (4th Cir. 2006).

The present allegations do not convey that the local Elks Lodge #2782 is a place of public accommodation. The complaint's single use of the conclusory term "entertainment" with no accompanying descriptive terms does not satisfy the plausibility pleading standard and does not permit the Court to conclude the lodge falls into one of the categories enumerated in the statute. A "'place of entertainment' includes a public establishment where entertainment takes the form of direct participation in some sport or activity as well as to an establishment where patrons are entertained as spectators or listeners." *Smith v. Young Men's Christian Ass'n of Montgomery, Inc.*, 462 F.2d 634, 648 (5th Cir. 1972) (*citing Daniel*, 385 U.S. at 306). "Whether an entity qualifies as a place of public accommodation can be a fact-intensive inquiry, because establishments differ markedly in their operations." *Denny*, 456 F.3d at 431 (finding that a beauty salon is not a place of entertainment as contemplated by Title II's definitions in 42 U.S.C. § 2000a(b)(3)).

The only other allegation that is connected to the determination of whether the lodge is a place of public accommodation is the reference to "membership. " *See* Doc. 1 at 1. However, the reference to "membership" undercuts a finding that the lodge is a public accommodation. Due to the failure to allege a plausible claim that the lodge is a place of public accommodation, the complaint fails to state a claim upon which relief can be granted. *See Williams v. Le Crewe de Spaniards*, CA No. 08-0506-WS-C, 2009 WL 197303, at *6 (S.D. Ala. Jan. 6, 2009) (finding that the plaintiff, an African-American, could not maintain a cause of action against defendant Mardi Gras organization

because she did not allege defendant was a place of accommodation and defendant, a private association, is not covered by Title II), *adopted,* 2009 WL 187254 (S.D. Ala. Jan. 23, 2009) (unpublished). This failure to state a claim is a ground for the complaint's dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Assuming *arguendo*, that plaintiff had met his pleading burden of showing that the lodge was a place of public accommodation, and defendants were served with process, the burden of proof would shift, *Anderson v. Pass Christian Isles Golf Club, Inc.*, 488 F.2d 855, 857 (5th Cir. 1974), and defendants would have the opportunity to assert that the lodge is a private establishment not subject to the anti-discriminatory provisions of 42 U.S.C. § 2000a applied to public accommodations. *See* 42 U.S.C. § 2000a(e) ("The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public[.]").

In the seminal case of *Cornelius v. Benevolent Protective Order of Elks*, 382 F. Supp. 1182, 1203-04 (D. Conn. 1974), the court held that defendant Groton Elks was a private club entitled to the private club exception when it ruled for the Groton Elks on the claim that it did not consider plaintiff's membership application because he was an African-American. *Id.* at 1204. The court observed that in the Congressional Record "the Elks were specifically mentioned as an example of an exempted organization." *Id.* (citing 1100 Cong. Rec. 2292, 2294, 6008, 7407). The court also found instructive the decision in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 171, 92 S.Ct. 1965, 1970, 32 L.Ed.2d 627 (1972), in which the Supreme Court found that the Moose Lodge is a private club with discriminatory membership practices that the plaintiff, an African-American, had no standing to challenge. *Id.* Similarly, in *Solomon v. Miami Woman's Club,* 359 F. Supp. 41, 44-45 (D.C. Fla. 1973), the court dismissed claims of African-Americans who had been

11

denied membership in defendant Miami Woman's Club due to their race because defendant was a private club exempt from the civil rights requirements of 42 U.S.C. § 2000a. *Id.* Furthermore, in *Williams,* CA No. 08-0506-WS-C, 2009 WL 197303, at *6 (unpublished), *supra*, an African-American's complaint against a private Mardi Gras association was dismissed because the organization was not a place of public accommodation covered by Title II. *Id.*

In addition, the complaint is lacking in direct allegations establishing that the lodge's operations affect commerce. Inferences can be made, but Rule 8(a) requires the pleading of this element with allegations indicating that it is plausible that the lodge operations affect commerce. The Court finds that the lone phrase "buying products to re[sell]" is inadequate to show that the lodge's operations plausibly affect commerce. *See* Doc. 1 at 1.

Furthermore, the Court finds an absence of allegations that identify plaintiff's race. Inasmuch as he relates that he was told that "people of color [were] not to be nominated for membership at [that] location, meaning [A]frican-[A]mericans, [M]exicans, etc.[,]" and was subjected to "verb[a]l[] abuse against [his] character, such as (poor white trash, son of a bitch, Etc.) in the presen[ce] of other lodge members[,]" the Court deduces that plaintiff is of another race, presumably Caucasian, and it also presumes that defendants are Caucasian. Thus, plaintiff's claim is that the Caucasian defendants discriminated him, a Caucasian. The reason for defendants' unfavorable treatment of him is not his "race, color, religion, or national origin," 42 U.S.C. § 2000a(a), but is with whom plaintiff is inviting to the lodge. However, 42 U.S.C. § 2000a protects against discrimination that occurs only on account of "race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Accordingly, the treatment that plaintiff is

12

experiencing from defendants is not the type of discrimination prohibited by 42 U.S.C. § 2000a(a).  *See Efstathiou v. Romeo Carryouts & Liquors, Inc.*, No. 96 C 8553, 1997 WL 603896, at *2 (N.D. Ill. 1997) (unpublished)(finding that rights of association are not protected under 42 U.S.C. § 2000a *et seq.*)

Considering that other courts have found Elks Lodges and other fraternal organizations' lodges are private organizations exempted from 42 U.S.C. § 2000a, and that plaintiff is a Caucasian who has not been discriminated against for one of the protected reasons, i.e., "race, color, religion, or national origin," the Court finds that plaintiff's claim of discrimination under 42 U.S.C. § 2000a is without an arguable basis in the law.

### 2. Defamation Claim.

As previously stated, the complaint contains allegations of ''false witness against me," "verb[a]l[] abuse against my character, such as (poor white trash, Son of a bitch, Etc.) in the presen[ce] of other lodge members," and "criticism." (Doc. 1 at 1-2).  This is the extent of the verbal statements that plaintiff claims were directed to him.  Although not labeled by plaintiff as such, the Court is treating these allegations as a claim for defamation.  *Warren v. Birmingham Bd. of Educ.*, 739 So.2d 1125, 1132 (Ala. Civ. App. 1999)  ("The law of libel and slander is discussed generally under the tort of defamation[.]" ).

"Defamation, by itself, is a tort actionable under the laws of most States, but [it is] not a constitutional deprivation."  *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).  There is "no constitutional doctrine converting every defamation . . . into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Paul v. Davis*, 424 U.S. 693, 702, 96 S.Ct.

1155, 1161, 47 L.Ed.2d 405 (1976).  A person's interest in his reputation is not a liberty or property interest recognized under the Due Process Clause.  *Id.* at 701-02, 96 S.Ct. at 1161.  To hold otherwise would turn the Due Process Clause into a font of tort law superimposed on state legal systems.  *Id.* at 701, 96 S.Ct. at 1160.  Accordingly, the Court finds that plaintiff's allegations of him being defamed are without legal merit.

### 3. Lack of Standing.

Interspersed through plaintiff's complaint are allegations that do not pertain to him, such as his daughter being called a derogatory phrase, "criticism" that is not directed to anyone, "discrimination . . . against people of color and members who do not fit this lodge's version of what an elk should be or look like," and "discrimination against [his] daughter and her [h]usband."  (Doc. 1 at 1-2).  Plaintiff can only pursue violations of his federal rights, and not violations of another's federal rights.  *Superior MRI Services, Inc. v. Alliance Healthcare, Services, Inc.,* 2015 WL 687711, at *3 (5th Cir. Feb. 18, 2015) ("a party must assert its own rights"); *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 1984) ("Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights . . . ."), *overruled on other grounds by Lexmark International, Inc. v. Static  Control Components, Inc.,* ___ U.S. ___, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014); *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) ("the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").  Therefore, plaintiff lacks standing to challenge the actions and statements directed to others.  These allegations in this action are without merit.

**III. Conclusion.**

"[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Morrison*, 228 F.3d at 1261. Therefore, based upon the foregoing reasons on which the Court found that plaintiff's claims are without arguable legal merit, it is recommended that this action be dismissed without prejudice for lack of subject matter jurisdiction. *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984) (holding that the district court's dismissal should have been without prejudice "[s]ince the court lacked subject matter jurisdiction over the action").

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir. 2013). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this 4th day of March, 2015.

s/ WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE